UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

WILLIAM KITCHEN III,

        Plaintiff,                          Case No. 1:17-cv-371

v.                                          Honorable Janet T. Neff

DAVE LEACH et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Defendant J. Daugherty because Plaintiff has failed to state a claim against him. The Court will also dismiss Plaintiff's Eighth Amendment and Fourteenth Amendment claims for failure to state a claim. Plaintiff's First Amendment and Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) claims

premised upon his allegation that the vegan menu imposes a substantial burden on his religious beliefs will be dismissed for failure to state a claim. The Court will serve the complaint against Defendants Leach and Willard, but only with respect to the remaining claims against them: Plaintiff's First Amendment and RLUIPA claims premised upon his allegation that the vegan menu causes him gastro-intestinal distress such that it interferes with his religious practices.

Plaintiff has also filed a motion for the appointment of counsel (ECF No. 3). For the reasons set forth herein, the Court will deny Plaintiff's motion.

## Discussion

I.  Factual allegations

Plaintiff William Kitchen III, who identifies himself as William "Ash-Shahir" Kitchen, is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Maximum Correctional Facility (AMF) in Baraga, Michigan. The events of which Plaintiff complains have occurred at AMF and at Plaintiff's previous placement, the Ionia Maximum Correctional Facility (ICF) in Ionia, Michigan. Plaintiff sues Dave Leach, Special Activities Coordinator for the MDOC; Patricia Willard, State Dietician for the MDOC; and J. Daugherty, Food Supervisor at ICF. All three Defendants are sued in their official capacities. Defendants Leach and Willard are also sued in their personal capacities.

Plaintiff is a Muslim prisoner. He has requested a Halal diet, a diet that is consistent with Islamic dietary laws. Defendant Leach authorized Plaintiff to receive MDOC religious meals.

The MDOC offers one religious meal plan. Plaintiff describes the plan as a non-lacto, strict vegetarian diet. The diet is soy oriented; it is non-dairy and offers no meat protein. Plaintiff alleges that Defendants Leach and Willard developed the diet to satisfy the Judaic, Islamic,

and Buddhist dietary restrictions. A Halal diet, however, does not preclude dairy or meat. Plaintiff explains:

> Halal means that which is authorized by Islamic Law (figh). The Halal dietary restrictions regarding animals are as follow[s]:
> Animals such as cow, sheep, goat, deer, moose, chicken, duck, game birds, etc. are all Halal but they must be Zabihah (slaughtered according to Islamic Rites) in order to be suitable for consumption. Once slaughtered one must pronounce the name of Allah Ta'ala or recite a blessing which contains the name of Allah Ta'ala.

(Compl., ECF No. 1, PageID.3-4.)

The MDOC religious diet causes Plaintiff gastro-intestinal distress. The gastro-intestinal distress, Plaintiff claims, disrupts Plaintiff's state of purity and cleanliness required for the conduct of his daily religious rituals. Plaintiff contends that the disruption presents a perpetual burden on the exercise of his prayer rites. Plaintiff also contends that Defendants Leach and Willard have been deliberately indifferent to his medical complications.

Plaintiff attaches documents to his complaint that indicate he brought to the attention of Defendants Leach and Willard that Halal does not preclude meat or dairy and that Defendants are effectively making him eat a Buddhist diet. Plaintiff indicates he also brought to the attention of Defendant Willard the gastro-intestinal distress brought on by his consumption of the MDOC vegan diet. (Compl. Exh. D, ECF No. 1-1, PageID.15.) She noted that a high fiber diet can cause intestinal side effects when a person is not used to it. (*Id*.) She recommended consuming at least 80 ounces of water per day and getting daily exercise to help alleviate the symptoms. (*Id*.) Plaintiff does not indicate whether Defendant Willard's recommendation proved helpful or whether he followed the recommendation. ICF healthcare personnel recommended over-the-counter medicine for Plaintiff's gastro-intestinal problems, but Plaintiff reported that the medicine did not help. (Compl. Exh. E, F, ECF No. 1-1, PageID.17-18.)

Plaintiff sues Defendant Daugherty because the styrofoam tray in which he received his religious meals was marked "kosher" or with a "k." Plaintiff states this improperly identified him as a Jew. Plaintiff contends that to accept, answer, or allow that identification is prohibited in Plaintiff's religion. Plaintiff's rejection of the designation and the "kosher" sign on his cell door led to verbal altercations with guards. Plaintiff suffered this practice at ICF and continues to suffer the practice at MSP.

Plaintiff attaches to his complaint communications with Defendant Daugherty, including one communication specifically directed to this practice. Defendant Daugherty states: "They should be marking it as a Religious tray and I have addressed this with the workers from the Religious kitchen." (Compl. Exh. J, ECF No. 1-1, PageID.27.) Plaintiff does not reveal whether Defendant Daugherty's efforts corrected the problem at ICF. In any event, according to Plaintiff, the practice continues at MSP.

Plaintiff seeks a declaration that the actions of Defendants violate the First Amendment guarantee of free exercise, as well as a deliberate violation of section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), and the Fourteenth Amendment guarantee of equal protection. In addition to that declaration, Plaintiff asks that the Court enjoin Defendants Leach and Willard from using a strict vegetarian diet as the Halal diet but to instead offer an alternative menu that suits Plaintiff's medical and religious criteria. Plaintiff asks the Court to enjoin Defendant Daugherty to stop identifying Plaintiff's trays as "kosher."[1] Finally, Plaintiff

---

[1] Plaintiff also requests that relief against the vendor that provides food service to the MDOC, Trinity, but he does not name Trinity as a Defendant. The Court does not have jurisdiction to enter a judgment against a non-party. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969) ("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party. The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant. Here, Hazeltine was not named as a party . . . ."); *In re*

seeks an award of punitive damages against Defendants Leach and Willard in the amount of $500.00 each.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

---

*NAACP, Special Contribution Fund*, 849 F.2d 1473 (6th Cir.1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Eighth Amendment

Plaintiff does not specifically reference the Eighth Amendment in his complaint; however, he does allege that "Defendant[s] Leach and Willard have disregarded Plaintiff's medical complications and this deliberate indifference has caused medical issues . . . ." (Compl., ECF No. 1, PageID.6.) Liberally construed, Plaintiff's allegations might be intended to serve as a foundation for a claim under the Eighth Amendment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In

other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Id.* at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

In this instance, to the extent Plaintiff intended to state a claim for violation of the Eighth Amendment, he has failed. Plaintiff's vague references to gastro-intestinal distress do not rise to the level of a serious medical need. There is nothing in Plaintiff's complaint or the "medical

record" Plaintiff has provided, consisting of nothing more than his periodic statements to health care providers and the MDOC dietician that he is suffering gastro-intestinal distress, to support the conclusion that Plaintiff has a substantial risk of serious harm.

Similarly, with regard to the subjective component, Plaintiff's allegations do not reflect deliberate indifference on the part of the Defendants. Defendant Willard indicated that Plaintiff's gastro-intestinal system could become accustomed to the high-fiber diet and that consuming more water and getting regular exercise would help. Plaintiff offers no facts that might support the conclusion that Defendants knew of facts from which they might infer that Plaintiff was subject to a substantial risk of serious harm or that they drew such an inference and then ignored the risk. Plaintiff has failed to state an Eighth Amendment claim.

IV. Fourteenth Amendment claim

Plaintiff specifically references the Fourteenth Amendment in his complaint. (Compl, ECF No. 1, PageID.5) ("Aside from medical complications Plaintiff['s] 1st Amendment and 14th Amendment rights continue to be neglected."). Plaintiff alleges that the MDOC religious vegan diet is "only conducive to Buddhist prisoners and [is] discriminative towards Plaintiff['s] dietary requirements." (Compl., ECF No. 1, PageID.4.) Thus, it appears Plaintiff is attempting to state an equal protection claim.

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment.

*Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

In this case, Plaintiff has not alleged disparate treatment. To the contrary, Plaintiff objects to being treated the same as the Buddhists. He does not allege he was denied any type of food that the Buddhists were served. Instead, he complains that all Buddhist inmates and Muslim inmates are treated the same, even though their respective dietary restrictions are different. Although treating similarly situated people differently may implicate the Equal Protection Clause, treating differently situated people the same way does not. Without a showing of different treatment, Plaintiff fails to state a claim for denial of equal protection.

V. <u>Violations of RLUIPA and the First Amendment Free Exercise Clause</u>

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish

that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff has sufficiently alleged his sincere beliefs regarding compliance with Muslim dietary restrictions and prayer rituals. The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water of Church of God v. Charter Tp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "'[A] 'substantial burden' must place more than an inconvenience on religious exercise.'" *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir.2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Living Water*, 258 F. App'x at 739.

A substantial burden stands in contrast to a *de minimis* burden on the free exercise of religion. Burdens that are less than substantial or isolated are not of constitutional dimension. *See Brown v. Graham*, 470 F. App'x 11, 15 (2nd Cir. 2012); *Norwood v. Strata*, 249 F. App'x 269, 272 (3rd Cir. 2007); *Walsh v. Louisiana High Sch. Athletic Ass'n*, 616 F.2d 152, 158 (5th Cir. 1980); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010); *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999); *White v. Glantz*, No. 92-5169, 1993 WL 53098 (10th Cir. Feb. 25, 1993); *Greenburg v. Hill*, No. 2:07-CV-1076, 2009 WL 890521 *8 (S.D. Ohio Mar. 31, 2009); *Al-Amin v. TDOC Com'r*, No. 3:12-cv-00249, 2012 WL 1231737 *5 (M.D. Tenn. Apr. 11, 2012); *Crump v. Best*, No. 09-14323, 2010 WL 940037 *3 (E.D. Mich. Feb. 4, 2010).

The analysis of Plaintiff's RLUIPA claim parallels the analysis of his free exercise claim.[2] In relevant part, the RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). While this definition of religious exercise is broad, it does require that Plaintiff's religious beliefs be "sincerely held." *See, e.g., Episcopal*

---

[2]The Eighth Circuit Court of Appeals has described the similarities and differences between free exercise and RLUIPA claims as follows:

> [W]hen faced with both a Free Exercise claim and a RLUIPA claim, a court must, as a threshold matter, inquire as to whether the prison has placed a "substantial burden" on the prisoner's ability to practice his religion. [*Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir.2008).] "Once it is determined that a regulation imposes a substantial burden on a prisoner, the review of that burden under the Free Exercise Clause differs from [ ] RLUIPA." *Id.* If the prisoner fails to put forth sufficient evidence that his ability to practice his religion has been substantially burdened, then the court need not apply the *Turner* test to the Free Exercise claim and the strict scrutiny test to the RLUIPA claim. *Id.*

*Gladson v. Iowa Dep't of Corrections*, 551 F.3d 825, 833 (8th Cir. 2009).

*Student Foundation v. City of Ann Arbor*, 341 F. Supp. 2d 691, 700 (E.D. Mich. 2004) (citation omitted); *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (citations omitted). Likewise, the Supreme Court has indicated that "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, __ St. Ct. __, No. 13-6827, 2015 WL 232143, at *6 (Jan. 20, 2015). However, prison officials may not inquire into whether a particular belief or practice is "central" to a prisoner's religion. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (recognizing that "the truth of a belief is not open to question, rather the question is whether the objector's beliefs are truly held"); *Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (holding that the "touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of 'whether the beliefs professed . . . are *sincerely held*,' not whether 'the belief is accurate or logical.'").

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit Court of Appeals has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in "free exercise" decisions. *Living Water*, 258 F. App'x at 733-34. Accordingly, a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations omitted); *Cutter*, 544 U.S. at 720 (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Marshall v. Frank*, 2007 WL 1556872, at *5 (W.D. Wis. May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one which renders religious exercise "effectively impracticable"). Similarly, if a policy requires a petitioner to "engage in

conduct that seriously violates [his] religious beliefs" or face disciplinary action, then the burden is substantial. *Hobbs*, 135 S. Ct. at 862. Moreover, the fact that the petitioner is able to engage in other forms of religious exercise is not relevant to whether the burden is substantial. *Id.*

By the same token, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g., Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761.

Under the First Amendment or under RLUIPA, Plaintiff must allege that his religious exercise has been substantially burdened. Plaintiff's complaint indicates that his religious exercise has been substantially burdened in three ways: first, his beliefs include dietary restrictions that the MDOC chooses to meet with a vegan meal requiring Plaintiff to give up meat and dairy even though those products prepared properly are permitted; second, his daily religious rituals require purity and the vegan diet causes gastro-intestinal distress that "disrupt[] plaintiff[']s 'mandatory' need to be in a state of purity and cleanliness" (Compl., ECF No. 1, PageID.4); and third, the MDOC practice of labeling religious meals with a "k" or as "kosher" results in Plaintiff being labeled as Jewish and, Plaintiff contends, accepting such a label violates his beliefs.

A. The vegan diet as a burden on Plaintiff's beliefs regarding diet

As a starting point, Plaintiff does not contend that his religious beliefs require him to eat the dairy and meat products that are missing from the MDOC vegan religious diet. Nor does Plaintiff contend that the MDOC vegan religious diet requires him to eat anything that is not permitted by his religious beliefs. His complaint, essentially, is that his religious beliefs permit him to eat certain foods that the MDOC will not supply to him. That does not rise to the level of a RLUIPA violation. The Sixth Circuit Court of Appeals and this Court have rejected the proposition that serving a Halal vegan meal to inmates constitutes a substantial burden on Muslim beliefs. *Robinson v. Jackson*, 615 F. App'x 310, 313-314 (6th Cir. 2015); *Hudson v. Caruso*, 748 F. Supp. 2d 721, 729-730 (W.D. Mich. 2010); *Davis v. Heyns*, No. 1:15-cv-19, 2017 WL 762401 (W.D. Mich. Feb. 28, 2017).

B. The vegan diet as a burden on Plaintiff's religious rituals

At first blush, Plaintiff's contention that the gastro-intestinal distress caused by the vegan diet substantially burdens his religious ritual practices seems to stretch credulity. Although Plaintiff's allegations are sketchy, an examination of the many cases exploring the conflicts between prison regulations and inmates' Muslim beliefs, reveals that maintaining purity for prayer when one is plagued by gastro-intestinal distress could be burdensome. *See, e.g., Mack v. O'Leary*, 80 F.3d 1175, 1177 (7th Cir. 1996) *vacated and remanded* 522 U.S. 801 (1997) (court noted that performance of ritual purification, known as wudu, would have to be repeated if one defiled himself by "breaking wind"). Indeed, the Ninth Circuit Court of Appeals concluded that the very claim Plaintiff raises here–a vegetarian Halal diet caused excessive gas that interfered with ritual purity required for Islamic worship–could demonstrate a substantial burden. *Shakur v. Schriro*, 514 F.3d

878, 888-889 (9th Cir. 2008); *see also Muhammad v. Arizona Dep't of Corr.*, No. CV-11-1890, 2013 WL 3864253 at *8 (D. Ariz. July 25, 2013) (court noted that plaintiff allegations that Muslims "must re-initiate ceremonial cleansing each time we pass gas" sufficed to allege substantial burden). Accordingly, Plaintiff's allegations, that the religious vegan diet imposed by Defendants Leach and Willard constitutes a substantial burden on Plaintiff's practice of religious rituals, suffice to warrant service of Plaintiff's claim under the First Amendment and RLUIPA.

      C.  <u>Marking Plaintiff's meals "kosher" as a burden on his religious beliefs</u>

Whether or not the marking of meals as "kosher" constitutes a substantial burden is immaterial because Plaintiff's allegations suffer from a fatal procedural defect. Plaintiff's claim relating to the marking of his religious meals is raised only against Defendant Daugherty, is the only claim raised against Defendant Daugherty, and he is sued only in his official capacity.

A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The state or one of the state's departments, regardless of the form of relief requested, would enjoy immunity under the Eleventh Amendment from such a suit in the federal courts, unless the state had waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous

unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In part, for that reason, an official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989).

Although sovereign immunity effectively precludes a § 1983 or RLUIPA official-capacity suit for money damages, an official-capacity suit seeking prospective declaratory or injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (Eleventh Amendment immunity does not bar injunctive relief against a state official); *Idaho v. Coeur d"Alene Tribe*, 521 U.S. 261, 276-277 (1997) ("Our precedents do teach us, nevertheless, that where <u>prospective</u> relief is sought against individual state officers in a federal forum based on a federal right, the Eleventh Amendment, in most cases, is not a bar.") (emphasis supplied). Thus, Plaintiff may only overcome the sovereign immunity bar and sustain his official capacity claims to the extent he is able to seek prospective declaratory or injunctive relief against Defendant Daugherty.

Here, the issue is complicated by Plaintiff's transfer. In several opinions, the Sixth Circuit has held that transfer to another prison facility moots prisoner claims for prospective injunctive and declaratory relief. *See, e.g., Parks v. Reans*, 510 F. App'x 414 (6th Cir. 2013); *Selby v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *Whiteside v. Parrish*, 387 F. App'x 608 (6th Cir. 2010); *Berryman v.* Granholm, 343 F. App'x 1 (6th Cir. 2009); *Cardinal v. Metrish*, 564 F.3d 794 (6th Cir. 2009); *Henderson v. Martin*, 73 F. App'x 115 (6th Cir. 2003); *Moore v. Curtis*, 68 F. App'x 561 (6th

Cir. 2003); Lyons v. Azam, 58 F. App'x 85 (6th Cir. 2003); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996). These Sixth Circuit opinions contain only brief explanations of the reasoning supporting this rule. In *Colvin*, 605 F.3d at 282, the court noted that a more searching inquiry might be warranted. To determine if a request for declaratory or injunctive relief is rendered moot by a prisoner's transfer requires an examination as to whether the prisoner faces ongoing harm. *Id.* at 295-296.

Plaintiff alleges ongoing harm here in that he states that the practice he suffered at ICF now continues at AMF. But, Plaintiff cannot rely on that harm to proceed against Defendant Daugherty. Plaintiff does not allege that the marking of his meals at MSP is connected in any way to the conduct of Defendant Daugherty. Although the *Ex Parte Young* Court was willing to permit claims against a state official in his official capacity despite Eleventh amendment immunity, the Court was not willing to permit such claims against just any state official. The Court stated that "such officer must have some connection with the [unconstitutional act], or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex Parte Young*, 209 U.S. at 157. The sued official "must have, by virtue of the office, some connection with the alleged unconstitutional act or conduct of which the plaintiff complains." *Floyd v. Cnty. of Kent*, 454 F. App'x 493, 499 (6th Cir. 2012). "A plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations." *Top Flight Entertainment, Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) (citing *Floyd*, 454 F. App'x at 499).

In *Taaffe v. Drake*, No. 2:15-CV-2870, 2016 WL 1713550 (S.D. Ohio Apr. 29, 2016) the district court considered whether the "some connection" requirement of *Ex Parte Young* was

coextensive with the personal involvement requirement for a § 1983 money damages claim, a requirement explained in *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). The court reasoned that they could not be coextensive because "[o]therwise, plaintiffs . . . would potentially be left without any remedy if the groups of defendants who violated the law and those who could fix the problem if ordered to do so were mutually exclusive." *Id.* at *5. Accordingly, the court concluded, "[t]he proper defendants in such an action are the ones who have the power to provide the relief sought, whether or not they were involved in the allegedly illegal conduct at issue." *Id.* Presently, Defendant Daugherty falls in neither group. He is not engaged in the conduct that warrants prospective relief and, based on Plaintiff's allegations regarding Daugherty's "office," Daugherty does not have the power to provide the relief sought, because it is occurring at another prison.[3] Accordingly, Plaintiff has failed to state a claim against Defendant Daugherty for the objectionable marking of the meal trays.

VI. Plaintiff's motion for the appointment of counsel

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur- Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989). Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and

---

[3]It is interesting to note that if Plaintiff had not been transferred his request for prospective declaratory or injunctive relief against Defendant Daugherty would likely be moot anyway because Daugherty acknowledged the problem and directed the ICF kitchen to mark the meals "religious" rather than "kosher." (Compl. Exh. J, ECF No. 1-1, PageID.27.)

Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Daugherty will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Additionally, Plaintiff's claims for violation of the Eighth Amendment and the Fourteenth Amendment will be dismissed for failure to state a claim. Finally, Plaintiff's First Amendment and RLUIPA claims premised upon his allegation that the vegan menu imposes a substantial burden on his religious beliefs will be dismissed for failure to state a claim. The Court will serve the complaint against Defendants Leach and Willard, but only with respect to Plaintiff's First Amendment and RLUIPA claims premised upon his allegation that the vegan menu causes him gastro-intestinal distress such that it interferes with his religious practices. Moreover, Plaintiff's motion for the appointment of counsel will be denied.

An Order consistent with this Opinion will be entered.

Dated: May 10, 2017         /s/ Janet T. Neff
                            Janet T. Neff
                            United States District Judge